UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Michael K. Brace and Susan Brace,   \*
          Plaintiffs   \*
             \*   **COMPLAINT**
V.   \*
             \*   **DEMAND FOR JURY**
Rite Aid Corporation and   \*
Sowmya Yabaluri, R.Ph.,   \*
          Defendants   \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

                                I.      PARTIES

1. Plaintiff, Michael K. Brace (hereinafter, Michael) is a citizen of the State of New Hampshire who resides at 159 Aladdin Street in Manchester, New Hampshire. At all times relevant to this lawsuit, Michael was a patient of Connie J. Campbell, MD. Michael was also a regular and consistent customer of the Rite Aid Pharmacy (formerly known as Brooks Pharmacy) located at 1285 Hooksett Road, Hooksett, NH.

2. Plaintiff, Susan Brace (hereinafter, Susan) is the wife of Michael. She is a citizen of New Hampshire who resides at 159 Aladdin Street in Manchester, New Hampshire as well. At all times relevant to this lawsuit, Susan observed Michael and has personal knowledge of facts relevant to his case.

3. Defendant, Rite Aid Corporation (hereinafter, RAC), is a business entity organized under the laws of Pennsylvania that operates retail pharmacies throughout the country. RAC maintains a principal business address at 30 Hunter Lane, Camp Hill, PA. The particular Rite Aid pharmacy (#10277) in question is located at 1285 Hooksett Road in Hooksett,

New Hampshire, and holds itself out to the public, including Michael, to be a pharmacy licensed in the State of New Hampshire. At all times relevant to this proceeding, RAC and its employed pharmacists owed a duty to fill prescriptions and provide pharmaceutical care services to patients, including Michael, within the standard of care and according to the laws, rules and regulations governing the practice of pharmacy. Michael was a patient of RAC where he had his prescription medication filled by RAC licensed pharmacists.

4. Defendant, Sowmya Yabaluri, R.Ph., is a pharmacist licensed to practice pharmacy in New Hampshire and on information and belief, is the pharmacist who filled Michael's prescription erroneously on August 8, 2007. He owed a duty to fill the prescription correctly and provide pharmaceutical care services within the standard of care and according to the laws, rules and regulations governing the practice of pharmacy. His residence is believed to be 12705 NE 114th Street, Kirkland, Washington 98033

## II.   JURISDICTION

5. Jurisdiction of this case falls under the common law of the State of New Hampshire and RSA 318 and 318-B and RSA 358-A and such other laws, rules and regulations of the State of New Hampshire. Federal jurisdiction falls under 28 USC §1332 – Diversity of Parties where the amount in controversy exceeds $75,000.00.

### III.   FACTS

6. On August 7, 2007, Michael underwent a lap-band surgical procedure which was performed at Catholic Medical Center in Manchester, NH by Connie J. Campbell, MD.

7. On August 8, 2007, Michael was discharged from Catholic Medical Center after the uneventful lap-band procedure had been performed.  Upon discharge, Michael was given a prescription for pain medication written by Dr. Campbell for "Roxanol Elixir 20 mg per ml. sig: 10-30 mg PO every 4 hours as needed for pain.  Disp 200 mls".  *Exhibit A*.  Roxanol Elixir is an extremely potent and dangerous narcotic medication with the active ingredient being morphine sulfate.

8. Susan took the prescription to the RAC pharmacy in Hooksett, New Hampshire to be filled on August 8, 2007.  This was Michael's regular pharmacy where he had purchased the majority of his prescriptions over the years.  RAC and its pharmacists and support staff owed a duty to the Plaintiffs to fill the prescription accurately, safely and in accordance with Dr. Campbell's written instructions.

9. Due to Michael's medical condition upon discharge, and pursuant to his doctor's instructions, he did not take the Roxanol prescription immediately.  It was necessary for him to become more stable prior to dosing with the narcotic analgesic, morphine sulfate.  Although the prescription was filled on August 8, Michael did not take his first dose until August 16, 2007.

10. Michael took his first dose of Roxanol on the evening of  August 16, 2007 after being seen by his dietician and Physician's Assistant earlier that day.  Michael followed the printed instructions on the label which stated that he should take "**½ to 1½ teaspoons by**

   **mouth every four hours as need for pain."** *Exhibit B*. Michael ingested one **full** teaspoon of the medication prior to going to bed, which is approximately 5 mls. This dose is approximately <u>ten times</u> the minimum dose written by Michael's physician.

11. Later that evening, Michael's minor daughter awoke to a loud crash in the bathroom. Upon investigation, she found her father unconscious on the bathroom floor, not breathing, and completely unresponsive. Susan immediately called 9-1-1 for emergency medical assistance and EMTs arrived at approximately 1:12 a.m. Michael was transported to Catholic Medical Center (CMC) in Manchester, NH.

12. Upon arrival at the CMC Emergency room, Michael was intubated and admitted into the Intensive Care Unit. At the time of his admission, the treating physicians noted that Michael was experiencing "acute respiratory failure".

13. Michael remained in the ICU in critical condition for several days. His condition required that he be treated by various specialists including, but not limited to, an intensivist, a cardiologist, a neurologist, and a urologist. The seriousness of his condition was evidenced by his symptoms and near death experience.

14. While in the ICU, Susan was informed that Michael may not survive the overdose. He was administered his "last rites" by the hospital priest. Susan was extremely frightened, emotionally devastated, and crying throughout these several days.

15. With the emergent care and life supporting resources of CMC, Michael became more alert over time. His condition improved sufficiently that he was discharged from CMC on August 20, 2007 with instructions from his physicians. He suffered permanent brain damage and severe emotional distress as a result of this narcotic drug overdose.

16. On October 20, 2007, Michael received a telephone call from the RAC pharmacy manager, Carrie Bobola. Ms. Bobola informed Michael that during an internal store audit, it was discovered that he had been given the "wrong medication" on August 8, 2007. Michael explained the life threatening medical condition caused by the medication that had been dispensed and asked Ms. Bobola for further explanation about the medication dispensed to him. Ms. Bobola refused to give Michael any further information, stating that the pharmacy supervisor would be in contact with him to discuss the matter further, and referred him to the "risk management department."

17. Michael did not receive any follow-up telephone call or correspondence from a pharmacy supervisor. He did get a letter from Pinnacle "Risk Management Services" confirming the fact that his prescription had been "misfiled" by the defendants. *Exhibit C*. Concerned about what had happened, Michael went to the pharmacy and requested further details on the "misfilled" medication that had been dispensed to him. Ms. Bobola informed Michael that she had been instructed by her manager not to provide him with any further information, however, Ms. Bobola did print a list of medications which had been dispensed to him over a period of time at RAC pharmacy. Upon inspection of this list, Michael confirmed that the "wrong" or "misfilled" medication which was dispensed to him on August 8, 2007 was for MORPHINE SULFATE, with instructions on the label to take a dose that was ten times the minimum dose prescribed by the physician. As a result, Michael was given instructions by the defendants to take an overdose of morphine that led to his respiratory failure, collapse, hospitalization and permanent injuries.

## IV. CLAIMS OF LIABILITY

### COUNT I - PHARMACY MALPRACTICE

18. The Defendant, Rite Aid Corporation, and its pharmacists and pharmacy staff employees, including, but not limited to, Defendant Sowmya Yabaluri, R.Ph., held themselves out to the community, including Michael, as being a pharmacy and pharmacist, respectively, that maintained the highest of standards delivering pharmaceutical care services with the prescriptions dispensed. Said pharmaceutical care services were rendered by licensed pharmacists and pharmacy support staff employed at RAC. The licensed pharmacists owed certain duties to Michael in accordance with state and federal law. Those duties include, but are not limited to, the interpretation and evaluation of prescription orders, the proper and safe distribution of drugs in accordance with the dispensing instructions ordered by the prescribing physician, the responsibility of advising, when necessary or when regulated of potential hazards or risks associated with the use of drugs, the offer to counsel the patient about special directions in taking medications and advising of precautions of taking new prescription medication. The RAC pharmacists also owed a duty to recognize and understand the importance of verifying, calculating and converting the correct and accurate dose and volume of a liquid prescription before dispensing it to a patient, particularly where the medication is a highly concentrated form of the narcotic medication, Morphine Sulfate, knowing that an incorrect dosing instruction could result in serious and permanent adverse effects from an overdose of medication, if improperly dispensed and ingested. It was also the duty of the Defendants and its pharmacy employees to inform Michael of the proper method of measuring and dosing such a

highly concentrated form of the narcotic, Morphine Sulfate and to provide and instruct Michael with an appropriate and safe dispensing dropper so as to prevent the ingestion of an inaccurate and lethal amount of said narcotic medication. It was also the Defendants' duty to inform Michael of the dangerous risks inherent in the ingestion of such a highly concentrated form of the narcotic medication, Morphine Sulfate, particularly where he had never been prescribed this medication before; that notwithstanding the aforesaid duties, and in breach thereof, the Defendants did negligently fail to provide Michael with the standard of pharmaceutical care in the dispensing of the narcotic medication, Morphine Sulfate; that as a direct, proximate and foreseeable consequence of the Defendants' breach of duty, Michael suffered permanent damages including but not limited to, life threatening medical complications, hospitalization, conscious pain and suffering, severe emotional distress, depression, mental anguish, anxiety and fear, loss of enjoyment of life, lost wages, medical bills and expenses, and hospital bills and expenses. The Defendants' actions rise to the level of willful, wanton or reckless indifference or disregard of the consequences to Michael that caused Michael to suffer a great amount of emotional pain and suffering entitling the Plaintiff to be awarded enhanced compensatory damages; that Michael's damages are within the jurisdictional limits of this Court, together with costs and lawful interest.

COUNT II - CONSUMER PROTECTION VIOLATION (RSA 358-A)

19. The Plaintiffs repeat and incorporate herein by reference each and every allegation contained in this Complaint as set forth above; that the Defendant, RAC, did advertise, offer and promote its services to the public, including Michael in this case, and

represented that its employed pharmacists were competent to provide pharmaceutical care services in accordance with the laws, rules and regulations governing the practice of pharmacy; that said advertisements and representations included maintaining patient profiles, monitoring patient prescriptions, interpretation and evaluation of prescription orders, proper and safe distribution of drugs, responsibility to advise and counsel patients of the therapeutic hazards and use of drugs, review of patient records, for the purpose of identifying incorrect drug dosage, counseling patients about special directions and precautions of new prescription medications, understanding the limitations of patients and incorporating that knowledge into the pharmaceutical care services delivered to the patient, providing the patient with appropriate dispensing droppers, particularly when dispensing highly concentrated and potentially dangerous narcotic medication, and providing such other and further pharmaceutical care services relevant to the particular patient's individual drug therapy and peculiar to the specific patient or drug according to the facts and circumstances presented; that they provide services of "well trained" pharmacists who can provide customers with drug information, including instructions on how to take medications. It is unlawful for any person to represent that goods and/or services are of a particular standard or quality if they are of another under the New Hampshire Consumer Protection Act. The representations of the Defendant's advertisements affirm that the pharmacists they employ have a superior knowledge with regard to dispensing prescription drugs, including the pharmacists ability to make correct dosage conversions, establish the existence of any possible side effects and drug interactions, and to generally dispense prescription drugs in a safe manner and with

proper dosing syringes/spoons.  The dispensing error made by the pharmacist in this case is not in accordance with the standard of service advertised.  The Defendant failed to provide Michael with the pharmacy services consistent with the advertisements and therefore is in violation of the New Hampshire Consumer Protection Act.  As a direct, foreseeable and consequential result of the Defendant's Consumer Protection violation, Michael has suffered a great amount of damages and is therefore entitled to recover actual damages, past and present, including but not limited to, the expense of any medical care or hospitalization, lost wages, conscious pain and suffering, fear and anxiety, depression and loss of enjoyment of life caused by his life threatening incident; in addition, Michael is entitled to an award of costs and reasonable attorney fees, together with lawful intent thereon; furthermore, to the extent that the Defendant's acts are demonstrated to be reckless or wanton, as alleged herein, Michael is entitled to treble damages, together with costs and lawful interest thereon; that the Defendant's conduct rises to the level of reckless indifference or disregard of the consequences to Michael, entitling him to an award of enhanced compensatory damages; that Michael's damages are within the jurisdictional limits of this Court, together with costs and lawful interest.

## COUNT III – LOSS OF CONSORTIUM

20. Susan repeats and incorporates herein by reference each and every allegation contained in this Complaint as set forth above; that the Defendants, jointly and severally, owed Susan a duty to provide competent pharmacy and pharmaceutical care services to her beloved husband; that said duty included, but was not limited to, the safe and accurate dispensing of prescription medication as ordered by her husband's physician; that notwithstanding

said duty and in breach thereof, the Defendants did violate the standard of care and duty to accurately and competently dispense the narcotic medication ordered by Michael's physician; that as a direct, proximate and foreseeable result of the Defendants said negligence and breach of duties, Susan has suffered damages including, but not limited to, medical bills and expenses, loss of company, companionship and consortium of her husband, extreme emotional pain and suffering, severe anxiety and emotional distress, grave concern, fear and apprehension for her future financial and emotional security, loss of services of her husband, loss of assistance from her husband, stress and tension in her personal and employment life, nightmares and loss of sleep, and the loss of ability to enjoy life and life's pleasures; that said damages are permanent in nature, past, present and future, in an amount within the jurisdictional limits of this Court.

## COUNT IV – DEMAND FOR JURY

21. The Plaintiffs respectfully request a jury trial in this case.

                                         Respectfully submitted,
                                         Michael K. Brace and Susan Brace, Plaintiffs
                                         By and through their attorneys,
                                         BELIVEAU, FRADETTE, DOYLE & GALLANT

Dated:   July 16, 2010                   By:_____/s/ Richard E. Fradette_____
                                                   Richard E. Fradette, Esquire
                                                   Bar No. 844
                                                   91 Bay Street - P.O. Box 3150
                                                   Manchester, NH 03105-3150
                                                   (603) 623-1234