```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

<u>Michael K. Brace, et al.</u>

    v.                                          Civil No. 10-cv-290-LM

<u>Rite Aid Corporation</u>

### <u>O R D E R</u>

Before the court are the Defendants' Motion to Remove Default (Doc. No. 9) and Motion for Leave to File Reply (Doc. No. 12) in support of its motion.  The court grants *instanter* the motion for leave to file reply, and further grants under Federal Rule of Civil Procedure 55(c) the motion to remove default.  Fed. R. Civ. P. 55(c).  Defendants have shown "good cause," specifically, (1) a misunderstanding on the part of defendants' counsel regarding the manner of service of process, and therefore, mistake as to whether service had already occurred; (2) lack of prejudice to the plaintiffs; and (3) absence of delay.

Under Rule 55(c), this court may set aside "for good cause" a clerk's default (Doc. No. 6) entered under Rule 55(a).  <u>Id.</u> Importantly, while the parties have argued their positions under the rubric of Rule 60(b)(1), that rule applies to the vacating

1

of default judgments entered under Rule 55(b), and not to the setting aside of Rule 55(a) defaults.  See id. ("The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).").

According to the First Circuit, the "good cause" standard for setting aside defaults, though "not so elastic as to be devoid of substance," is a less "rigorous standard" that is "more easily overcome, than that which obtains under Rule 60(b)." Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989).  To the extent, therefore, that plaintiffs believe that defendants must meet the higher level of proof under Rule 60(b), they are mistaken.

Though courts more easily grant motions to set aside defaults, the factors considered in determining "good cause" are essentially the same as the factors courts consider in deciding Rule 60(b) motions to vacate default judgments.  See, e.g., Shaw v. 500576 N.B. Ltd., 668 F.Supp.2d 237, 244 (D. Me. 2209). Those factors include: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion.  General Contracting & Trading Co., LLC v. Interpole, Inc., 899 F.2d 109, 112 (1st Cir. 1990).

2

The parties' arguments in the present case focus primarily on factor number four, the nature of defense counsel's explanation for the default.  Based on the record submitted, the court finds that defense counsel failed to respond to the complaint within the timeframe set forth in Rule 12 because he believed the parties were still discussing service through the waiver procedure, and therefore, he mistakenly believed that service of process had not yet been effected.

Communications between the attorneys in this case, which included telephone calls and letters, can reasonably be interpreted as conversations about whether service would be effected through the waiver procedure of Rule 4(d).  Fed. R. Civ. P. 4(d).  First, in their July 14, 2010, telephone conversation the parties' attorneys discussed whether defense counsel would waive service of process for the defendants. (Doc. Nos. 10-1, par. 3; 12-1, par. 2).  The issue was left unresolved at the time.  Plaintiffs thereafter filed suit on July 16, 2010.  (Doc. No. 1).  On July 19, 2010, plaintiffs' attorney sent a letter to defense counsel informing him that the case had been filed and that plaintiffs' previous attorney "has requested Service of Process of the enclosed [complaint] on both Defendants."  (Doc. No. 9-1).  In light of the attorneys' July 14 telephone conversation regarding waiver of process, the court finds that this line in the July 19 letter could reasonably have

3

been interpreted as plaintiffs' reiterated request of defense counsel for waiver of service. Defense counsel has filed a sworn affidavit stating that he, in fact, understood the statement in that way. (Doc. No. 12-1, par. 3).

In addition, communications between the attorneys after the July 19 letter are consistent with the idea that defense counsel mistakenly believed that service had not yet occurred and that the parties were still discussing the possibility of service through the waiver procedure. During a telephone conversation between the parties' counsel on August 3, 2010, defense counsel advised plaintiffs' counsel that he had authority to accept waiver of service for defendants Yabaluri and Maxi Drug North, Inc., but not Rite Aid. (Doc. 12-1, par. 4). (It is the defendants' position that Maxi Drug is the properly named defendant in this case.) At that point in time, however, Yabaluri and Rite Aid had already been served process by personal delivery, which occurred on July 28, 2010. See Doc. Nos. 4 and 5 (returns of service). Notably, during the August 3 telephone call plaintiffs' counsel did not correct defense counsel's apparent belief that service had not yet occurred. (Doc. No. 12-1, par. 4).

Defense counsel then sent a confirming letter, dated August 3, 2010, reiterating that he would accept service on behalf of Yalaburi and Maxi Drug North, and requested that plaintiffs'

4

attorney "please advise how you intend to proceed." (Doc. No. 9-2). Plaintiffs' attorney did not respond to that letter. (Doc. No. 12-1, par. 5). Plaintiffs filed returns of service for Yalaburi and Rite Aid on August 18, 2010, showing service by personal delivery on July 28, 2010. (Doc. Nos. 4 and 5). On August 31, plaintiffs' counsel informed defense counsel by phone that service had occurred. (Doc. No. 12-1, par. 6). The sworn affidavit of defense counsel states that this is the first time he learned that service had been effected. (Doc. No. 12-1, par. 6).

These communications support defendants' position that its counsel mistakenly thought that service on the defendants had not yet occurred. See Lacy v. Sitel Corp., 227 F.3d 290, 293 (5th Cir. 2000) (finding defendant's communications with plaintiff regarding waiver of service evidenced defendant's belief that service had not been effected). In addition, plaintiffs' attorney in the present case at several intervals could have, but did not, "disabuse [defendant] of its mistaken belief." Id. (reversing entry of default judgment because defendant's failure to submit responsive pleadings was not willful, but based on erroneous belief that service had not been effected, and plaintiff did nothing to correct defendant's erroneous belief).

The court notes that prior to commencement of this suit defense counsel had been engaged with plaintiffs' counsel in pre-filing settlement attempts. (Doc. No. 10-1, par. 2). That history of engagement lends support to the notion that defendants' counsel was honestly mistaken in his beliefs, and not, as plaintiffs suggest, inexcusably negligent.

In addition to considering the communications between the parties' attorneys, the court also considers whether plaintiffs will suffer any real prejudice should this court remove the default and whether the delay in filing the motion to remove default was short or lengthy. See General Contractor, 899 F.2d at 112. On the latter point, plaintiffs agree that the delay was "brief." (Doc. No. 10, p. 9). Defense counsel became aware on August 31, 2010, of the Clerk's entry on August 26 of a default, Doc. No. 6. The next day, defense counsel filed its Motion for Removal of Default. (Doc. No. 9). As for prejudice, plaintiffs only point to the fact that they will have to prove liability through a trial instead of relying on a default judgment. This is not cognizable prejudice for the present purposes. See Jackson v. Delaware Cty., 211 F.R.D. 282, 283 (E.D. Pa. 2002) ("The fact that a plaintiff will have to litigate an action on the merits rather than proceed by default does not constitute prejudice.").

Accordingly, the court grants the Motion to Remove Default (Doc. No. 9). In addition, because there is no longer any predicate for the plaintiffs' Motion for Default Judgment (Doc. No. 11), the court denies that motion.

SO ORDERED.

_____
Landya B. McCafferty
United States Magistrate Judge

Dated: September 29, 2010

cc: Richard E. Fradette, Esq.
    Andrew Ranks, Esq.
    Mark W. Shauughnessy, Esq.