```
           UNITED STATES DISTRICT COURT
             DISTRICT OF NEW HAMPSHIRE
```

Michael K. Brace and
Susan Brace

    v.                                            Civil No. 10-cv-290-LM

Rite Aid Corporation; Maxi
Drug North, Inc.; and Sowmya
Yabaluri, R.Ph.


## **O R D E R**

Michael and Susan Brace have sued Rite Aid Corporation ("Rite Aid"), Maxi Drug North, Inc. ("Maxi Drug"), and pharmacist Sowmya Yabaluri for pharmacy malpractice, violating the New Hampshire Consumer Protection Act ("CPA"), and loss of consortium.  Before the court is a motion to dismiss Count II, plaintiffs' CPA claim, filed by Rite Aid and Yabaluri.[1]  Plaintiffs object.  For the reasons given, Rite Aid's motion to dismiss is granted.


**The Legal Standard**

A motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether

---

[1] Because Yabaluri is not a defendant in Count II, the court will treat this motion as Rite Aid's alone.

a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  That is, the complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims." Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), a trial court "assume[s] the truth of all well-plead facts and give[s] the plaintiff[s] the benefit of all reasonable inferences therefrom." Vernet v. Serrano-Torres, 566 F.3d 254, 258 (1st Cir. 2009) (quoting Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007)).  However, the court need not credit "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, . . . outright vituperation or subjective characterizations, optimistic predictions, or problematic suppositions." Fantini, 557 F.3d at 26 (citations and internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  On the other hand, a Rule 12(b)(6) motion should be granted if "the facts, evaluated in

[a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (citations omitted).

**Background**

By order dated February 2, 2011, the court granted plaintiffs' motion to amend their complaint. See doc. no. 29. Rite Aid's motion to dismiss was filed before the motion to amend, but the CPA claim asserted in Count II of the amended complaint is identical to the CPA claim in the original complaint, but for the addition Maxi Drug as a defendant. Accordingly, there is no reason why the court cannot treat Rite Aid's motion as a motion to dismiss Count II of the amended complaint, and rule on it. That said, the relevant facts, drawn from plaintiffs' amended complaint, are as follows.

On August 8, 2007, upon his discharge from the hospital after a lap-band surgical procedure, Michael Brace (hereinafter "Brace") was given a prescription for Roxanol Elixir, a pain medication that has morphine sulfate as its active ingredient. That same day, Brace had the prescription filled at his regular pharmacy, the Rite Aid in Hooksett. When he took his first dose, he followed the directions on the label. Because of a pharmacist's error, when Brace took the medication, in compliance with the instructions on the label, he ingested a

3

dose that was approximately ten times the minimum dosage prescribed by his doctor. Brace's morphine overdose resulted in acute respiratory failure, several days in critical condition in the intensive care unit, and permanent brain damage. Both Brace and his wife experienced severe emotional distress as a result of the overdose.[2]

Based on the foregoing, plaintiffs sued Rite Aid, Maxi Drug, and Yabaluri. In Count II of their amendment complaint, they claim that Rite Aid and Maxi Drug violated the New Hampshire CPA, N.H. Rev. Stat. Ann. ("RSA") § 358-A, by representing that they provided pharmaceutical services of a higher quality than the services they actually provided.

### Discussion

Rite Aid moves to dismiss Count II, arguing that plaintiffs have failed to allege conduct that meets the CPA's rascality standard or conduct that was deceptive or unfair. It further argues that where, as here, the alleged injuries are the result of a good-faith error, albeit one that breached the relevant standard of care, there is no liability under the CPA, under the principles stated in Kelton v. Hollis Ranch, LLC, 155 N.H. 666 (2007) (affirming trial court ruling that horse buyer had no CPA claim where seller advertised stud as a gelding, and

---

[2] Brace's condition was so serious that he was administered last rights by a hospital priest.

had no way of knowing that horse was not a gelding, due to an undescended testicle).

Plaintiffs respond initially with an unavailing argument, that Rite Aid's motion to dismiss should be denied as premature, because they have not yet conducted discovery. The point of a motion to dismiss is to test the allegations in the complaint, see Sutliffe, 584 F.3d at 325; Fantini, 557 F.3d at 26, so plaintiffs' lack of discovery does not make Rite Aid's motion to dismiss premature; it is right on time.

Substantively, plaintiffs argue that the New Hampshire Supreme Court's rascality test does not apply here, because they are claiming that Rite Aid (and Maxi Drug) committed one of the acts specified in RSA 358-A:2, not that defendants' conduct was an otherwise unspecified "unfair method of competition or unfair or deceptive act or practice," id. While the court does not need to reach that issue, plaintiffs appear to be correct with regard to the applicability of the rascality test. See Beer v. Bennett, 160 N.H. 166, 171 (2010) ("The rascality test is used to determine 'which commercial actions, not specifically delineated, are covered by the [CPA].' ") (quoting ACAS Acquisitions v. Hobert, 155 N.H. 381, 402) (2007)) (emphasis added). Plaintiffs also contend, however, that the conduct they allege satisfies the rascality test. In addition, plaintiffs reject Rite Aid's argument that it is insulated from CPA

5

liability by Kelton, and argue that this case is controlled by Beer, 160 N.H. 166 (affirming trial court decision that seller of car who failed to inventory its parts before selling it was liable under CPA for advertising that car missing parts necessary to make it run had "pretty vigorous performance").

Based on Kelton and Beer, Rite Aid is entitled to dismissal of plaintiffs' CPA claim.  The CPA makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  RSA 358-A:2.[3]  Beyond that, the Act specifically proscribes fourteen different deceptive acts or practices, including "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another."  RSA 358-A:2, VII.  That is the provision on which plaintiffs rely for the cause of action they assert in Count II.

In Kelton, the plaintiff sued the defendant for selling her a stud named Magic when it represented to her that Magic was a gelding.  See 155 N.H. at 666.  The buyer's theory was that the seller had represented Magic as being of one quality (gelded) when he was of another (not gelded), in violation of RSA 358-A:2, VII, and that the defendant had represented Magic as having characteristics he did not have (no testicles), in violation of RSA 358-A:2, V.  See 155 N.H. at 667.  The seller defended by

---

[3] Hereinafter, the general statement in the preamble of RSA 358-A:2 will be referred to as the "catch-all" provision.

6

arguing that it did not know that Magic was a stud, and introduced testimony that even a veterinarian examining Magic at the time of the sale would not have been able to determine that he was not a gelding.  Id.  The trial court ruled "that RSA 358-A:1 require[d] [the buyer] to show that [the seller] 'at a minimum, [had] a reasonable basis to suspect that its representation [was] unreliable or untrue' in order to constitute a violation of the statute."  Id.  The New Hampshire Supreme Court affirmed.  Id. at 668.

In Beer, the Supreme Court was confronted with a case in which a seller advertised an antique Fiat as having "pretty vigorous performance," 160 N.H. at 167, when, in fact, the car was missing various parts it needed to run, id.  Relying on Kelton, the seller argued that he was not liable under the CPA because he never inventoried the car's parts when he acquired it and, therefore, did not know when he advertised the car for sale that it lacked the parts necessary to make it run.  Id. at 170. Based on a determination that the car's lack of parts "would have been easily ascertainable upon inspection," id. (citation omitted), the Supreme Court distinguished Kelton, where the horse's ineffective gelding was not easily ascertainable, id. at 171, and concluded that "the [seller's] reckless disregard for the truth of his statements satisfies the degree of knowledge or intent required by Kelton," id.  Ultimately, the Supreme Court

affirmed the trial court's determination that the seller was liable under the CPA's catch-all provision[4] because the seller "made representations, knowing he lacked sufficient knowledge to substantiate them, to induce the plaintiff's purchase." Id. at 171.

Under Kelton and Beer, in order to state a claim under RSA 358-A:2, VII, plaintiffs must allege a representation that Rite Aid made, with actual knowledge of its falsity or reckless disregard for its truth, with the intent to induce customers to have their prescription filled at a Rite Aid pharmacy. Plaintiffs have not done so.

Rite Aid's reliance on Kelton is certainly apt, but its application of Kelton to the facts of this case is somewhat askew. In Kelton, the seller prevailed because the evidence showed that its misrepresentation that Magic was a gelding was made in good faith, i.e., without knowledge of its falsity. Here, rather than focusing on whether plaintiffs have adequately alleged that the pharmacy made a knowing or reckless misrepresentation, Rite Aid argues that plaintiffs have not alleged that Brace's prescription was misfiled intentionally or with malice. That, of course, is entirely beside the point.

---

[4] While the trial court determined the plaintiff's liability under the catch-all provision rather than RSA 358-A:2, VII, the Supreme Court observed that the evidence would have sustained a finding that the defendant had violated both RSA 358-A:2, V, and RSA 358-A:2, VII. Beer, 160 N.H. at 169.

8

What matters is what plaintiffs have alleged concerning Rite Aid's representations about the quality of its pharmacy services and the state of mind with which it made them. When the principles stated in Kelton and Beer are correctly applied, Count II falls well short of the mark.

In the first place, this case is not like Kelton, in which the seller was alleged to have said that a stud was a gelding, see 155 N.H. at 666, or Beer, in which the seller was alleged to have said that an inoperable car was capable of "pretty vigorous performance," 160 N.H. at 169. Here, the portion of Count II that purports to identify Rite Aid's misrepresentation is not nearly so clear or precise. While it speaks in a generalized way about Rite Aid's advertisement and promotion, it identifies no specific advertisement, and it alleges no actual statement by Rite Aid. Rather, the complaint alleges:

> [T]he Defendants, RAC and MDN, did advertise, offer and promote its services to the public, including Michael in this case, and represented that its employed pharmacists were competent to provide pharmaceutical care services in accordance with the laws, rules and regulations governing the practice of pharmacy; that said advertisements and representations included maintaining patient profiles, monitoring patient prescriptions, interpretation and evaluation of prescription orders, proper and safe distribution of drugs, responsibility to advise and counsel patients of the therapeutic hazards and use of drugs, review of patient records, for the purpose of identifying incorrect drug dosage, counseling patients about special directions and precautions of new prescription medications, understanding the limitations of patients and incorporating that knowledge into the pharmaceutical care services

> delivered to the patient, providing the patient with
> appropriate dispensing droppers, particularly when
> dispensing highly concentrated and potentially
> dangerous narcotic medication, and providing such
> other and further pharmaceutical care services
> relevant to the particular patient's individual drug
> therapy and peculiar to the specific patient or drug
> according to the facts and circumstances presented;
> that they provide services of "well trained"
> pharmacists who can provide customers with drug
> information, including instructions on how to take
> medications. . . .  The representations of the
> Defendants' advertisements affirm that the pharmacists
> they employ have a superior knowledge with regard to
> dispensing prescription drugs, including the
> pharmacists' ability to make correct dosage
> conversions, establish the existence of any possible
> side effects and drug interactions, and to generally
> dispense prescription drugs in a safe manner and with
> proper dosing syringes/spoons.  The dispensing error
> made by the pharmacist in this case is not in
> accordance with the standard of service advertised.
> The Defendants failed to provide Michael with the
> pharmacy services consistent with the advertisements
> and therefore is in violation of the New Hampshire
> Consumer Protection Act.

Am. Compl. ¶ 20. What is notably missing from Count II is any allegation about when, where, how, or to whom Rite Aid communicated any representation concerning the quality of its pharmacy services.  It is almost as if plaintiffs allege that Rite Aid made those representations implicitly, simply by conducting a pharmacy business.

The generality of plaintiffs' allegations is problematic, to say the least.  See Cecere v. Loon Mt. Rec. Corp., 155 N.H. 289, 297-98 (2007) (granting summary judgment on CPA claim to defendants where plaintiff "alleged that the defendants violated the CPA by falsely advertising that the terrain park and

10

specifically its jumps were 'state of the art' and 'safe for the use by patrons for the specific purpose of snowboarding' " but produced "no advertising by the defendants representing that the terrain park was 'state of the art' or 'safe for . . . snowboarding' "). Where plaintiffs claim that Brace relied to his detriment on Rite Aid's false advertising, it is not asking too much to require plaintiffs' complaint to identify, with some precision, the alleged falsehood on which Brace allegedly relied.

More problematic, however, is the complete lack of any allegation sufficient to meet the knowledge requirement established in Kelton, even as modified by Beer. Assuming that the representations described by plaintiffs all did appear in Rite Aid advertisements, see Vernet, 566 F.3d at 258, plaintiffs simply do not allege that Rite Aid knew, or was reckless in not knowing, that Yabaluri did not meet the level of competence promised by its advertisements. All plaintiffs allege is that Yabaluri made a serious mistake in filling Brace's prescription, a mistake that is inconsistent with the various representations Rite Aid allegedly made about the quality of its pharmacy services. That may well suffice to state a claim for pharmacy malpractice, but for plaintiffs to state a CPA claim, they must allege that Rite Aid made a false or deceptive statement about

its pharmacy services, knowingly or recklessly, with the intent of attracting customers.

Consumers are protected against bad products by tort law and the law of products liability. The purpose of the CPA is to protect consumers from those who would sell them goods and services under false pretenses. See Hughes v. DiSalvo, 143 N.H. 576, 578 (1999) ("The purpose of the [CPA] 'is to ensure an equitable relationship between consumers and persons engaged in business.") (quoting McGrath v. Mishara, 434 N.E.2d 1215, 1222 (Mass. 1982). That is, it is not a CPA violation to sell bad goods or services; the CPA is implicated only when a seller induces the purchase of such goods through the use of deception.[5]

Plaintiffs attempt to meet the Beer standard for reckless disregard by pointing out that if Rite Aid or Yabaluri had taken various simple steps to verify the accuracy of the prescription Yabaluri dispensed to Brace, Brace's overdose could have been prevented. That may well be, but the issue is not Rite Aid's failure to acquire the information necessary to prevent it from misfilling Brace's prescription; the issue is what Rite Aid knew

---

[5] While the New Hampshire Supreme Court does not appear to have held that an ordinary tort is not a violation of the CPA, such a conclusion would seem to follow from the well-established rule that "[a]n ordinary breach of contract claim . . . is not a violation of the CPA." State v. Sideris, 157 N.H. 258, 262 (2008) (citing State v. Moran, 151 N.H. 450, 453 (2004)); see also Barrows v. Boles, 141 N.H. 382, 390 (1996) ("An ordinary breach of contract claim does not present an occasion for the remedies under the Consumer Protection Act.") (citing Atkinson v. Rosenthal, 598 N.E.2d 666, 670 (Mass. App. Ct. 1992)).

12

or should have known about the quality of its pharmacy services when it made the representations about those services that Brace allegedly relied on. Because there are no allegations of knowing or reckless deception in the complaint, Rite Aid is entitled to dismissal of Count II.

## Conclusion

For the reasons given, Rite Aid's motion to dismiss Count II, doc. no. 22, is granted. Moreover, because the court can imagine no circumstances under which it would rule differently on a motion to dismiss Count II submitted by Maxi Drug, the court, acting sua sponte, dismisses Count II as to Maxi Drug. Accordingly, this case now consists of Counts I and III, against all three defendants.

**SO ORDERED.**

_____
Landya B. McCafferty
United States Magistrate Judge

Date: February 14, 2011

cc: Richard E. Fradette, Esq.
    Andrew Ranks, Esq.
    Mark W. Shaughnessy, Esq.